UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHRYN LYNN SPOONER,

      Plaintiff,                                                    Case No. 19-cv-13379
                                                                         Hon. Matthew F. Leitman

v.

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

_____/

## ORDER (1) OVERRULING PLAINTIFF'S OBJECTIONS (ECF No. 24) TO REPORT AND RECOMMENDATION (ECF No. 23); (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 21); AND (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 19)

In this action, Plaintiff Kathryn Lynn Spooner challenges the denial of her applications for supplemental security income and disability insurance benefits under the Social Security Act. (*See* Compl., ECF No. 1.) Both Spooner and Defendant Commissioner of Social Security filed motions for summary judgment. (*See* Mots., ECF Nos. 19, 21.) The assigned Magistrate Judge then issued a Report and Recommendation in which he recommended that the Court deny Spooner's motion and grant the Commissioner's motion (the "R&R"). (*See* R&R, ECF No. 23.)

Spooner has now filed timely objections to the R&R. (*See* Objections, ECF No. 24.) Spooner raises 15 different objections. Some of the objections are

generalized attacks on the R&R. Others take issue with the citation format used by the Magistrate Judge. And other objections argue that the Magistrate Judge and the assigned Administrative Law Judge wrongly ignored or and/or discounted certain evidence. The Court has reviewed each of the objections and concludes that none entitle Spooner to relief. Therefore, for the reasons explained below, the Court **OVERRULES** Spooner's objections, **DENIES** her motion for summary judgment, and **GRANTS** the Commissioner's motion.

## I

### A

On July 14, 2016, Spooner applied for disability insurance benefits and supplemental security income under the Social Security Act. (*See* ECF No. 12-5, PageID.231-238.) Spooner said that she was disabled and entitled to benefits due to post-traumatic stress disorder, manic depression, attention deficit hyperactivity disorder, and anxiety. (*See* ECF No. 12-6, PageID.271.) Spooner also said that she suffered from chronic back pain. (*See* ECF No. 12-3, PageID.125.) The Social Security Administration denied her applications on August 24, 2016. (*See id.*, PageID.118-147.)

After the Social Security Administration denied Spooner's applications, she sought a hearing on that decision before an Administrative Law Judge (the "ALJ").

Spooner testified at that hearing. (*See* ALJ Hr'g Tr., ECF No. 12-2, PageID.83-116.) Relevant here, Spooner testified that:

- She attends group therapy two hours a week for her borderline personality disorder and attends private counselling once a week. (*See id.*, PageID.100.);

- She suffers from "really extreme depression … [a]t least twice a week." (*Id.*, PageID.101.);

- She has "suicidal thoughts regularly" – that she addresses in group therapy – and frequent "crying spells." (*Id.*, PageID.106-107.);

- She has "[i]ntolerable back pain" that "limit[s] what [she] can do." (*Id.*; PageID.102); and

- Her back pain "intensif[ied]" after a March 2017 car accident, and her neurosurgeon recommended that she have back surgery. (*Id.*, PageID.104.)

In addition to testifying at the hearing, Spooner also presented medical records and assessments from her treating physicians to the ALJ.  Relevant to her objections, Spooner presented records from her treating psychiatrist, Dr. Harold Lenhart and her therapist, Melissa Escoffre.  Of particular note, Spooner presented a May 17, 2017, letter from Dr. Lenhart in which Dr. Lenhart wrote:

> Kathryn [Spooner] is under my care for treatment of Bipolar Affective Disorder Type 2. She predominantly suffers from depression, which zaps her energy, makes concentration and attention difficult, causes social isolation and impairs her sleep. She is cooperative with treatment, but her continuing depressive symptoms make her return to the workforce impossible at this time.
>
> She is motivated to return to the work world and I will continue to monitor her progress. Her prognosis is good.

(ECF No. 12-7, PageID.587.)

Spooner also presented medical records from her primary care physician, a specialist in physical medicine and rehabilitation that provided treatment to Spooner, and a neurosurgeon (Dr. Mark Adams) with whom Spooner consulted regarding her back pain. Spooner insists that these records show a continued deterioration in the condition of her back – a deterioration that accelerated after her March 2017 car accident – that resulted in Dr. Adams recommending surgery in May 2018. (*See* ECF No. 12-8, PageID.810.) To the extent relevant to her objections, these medical records will be discussed in more detail below.

**B**

The ALJ issued a written decision denying Spooner's applications for benefits on September 17, 2018. (*See* ALJ Decision, ECF No. 12-2, PageID.65-77.) The ALJ first determined that Spooner suffered from the following severe impairments: obesity, borderline personality disorder, bipolar disorder, post-traumatic stress disorder, and degenerative cervical and lumbar disc disease. (*See id.*, PageID.67.)

4

He then determined that Spooner did "not have an impairment or combination of impairments that meets or medically listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*, PageID.67-69.) With respect to Spooner's depression and anxiety, the ALJ reached the following conclusions:

> The severalty of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criterial of listings 12.04, 12.08, and/or 12.5. In making this finding, I have considered whether the "paragraph B "criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriate, or effectively, on a sustained basis.
>
> In understanding, remembering, or applying information, the claimant has a moderate limitation. Some of her IQ testing suggested limitations, though at homes not. (1F/2, 11). The clamant also indicated that she has problems with her memory (1F, 13F). However, she is noted to have been an excellent student with no learning disabilities, intellectual disabilities, or cognitive disorders. (Ex. 1F). During the period at issue, all mental status exams describe at least average intellectual functioning and fund of knowledge with no notable memory deficits, distractibility, loss of concentration/focus, or cognitive difficulties. The claimant has demonstrated the ability to recount specific of her personal and medical history [d]ating back to childhood. She is the primary caregiver to her autistic son, which requires her to remember his

treatment plan and keep track of his appointments, in addition to her own. Her therapy records note that she has been able to comprehend, learn and apply new strategies to deal with anxiety and stress, as well as to improve her interpersonal skills. She has also kept a diary for therapy and regularly completes homework assigned in group.

In interacting with others, the claimant has a mild limitation. She admit[s] to anger issues and primarily reports difficulty getting along with family members. However, she is also noted to be an active and productive member of her group; she made at least one friend in group that she socializes with; [s]he reports having other friends; she can leave her home and function in public places and social contexts without significant difficulty; and she can drive a car, go shopping in stores, take herself and her son to their appoints and navigate errands without any reported problems. She continues to have some conflicts with her parents and ex-husband, but the record does not describe pervasive interpersonal issues affecting all areas of her life.

With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. While her mental status exams generally describe no specific or chronic deficits in this functional area, I have taken unto account the claimant's reports of chronic pain, poor sleep and mood fluctuations (especially when under stress; and find[] that such factors could reasonably cause a moderate degree of interference in this functional area.

As for adapting and managing oneself, the claimant has experienced no limitation. She lives independently and is raising her autistic son largely on her own. She does chores, shops, cooks meals, drives, and tends to her personal needs and those of her son, advocates for herself and for her son, and has pursued appropriate treatment fo[r] her medical and mental health conditions. Emotionally, she has shown better mood regulation with adherence to treatment and active participation in therapy,

6

> using the techniques learned there to improve her personal and interpersonal functioning.
>
> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

(*Id.*, PageID.68-69.)

Next, the ALJ concluded that Spooner had the residual functional capacity ("RFC") to perform "light work" with certain restrictions. (*Id.*, PageID.70.) These restrictions included not "climb[ing] ladders, ropes or scaffolds" and being restricted to performing "only simple routine tasks with no fast paced or production rate work." (*Id.*) In reaching this RFC, the ALJ considered Spooner's testimony about her conditions, the medical records from her treating physicians and a consulting physician, and a letter from Spooner's father regarding Spooner's condition. With respect to Dr. Lenhart's May 2017 letter described above, in which Dr. Lenhart concluded that Spooner was unable to work due to her depression and anxiety, the ALJ explained that that opinion "lack[ed] persuasive weight":

> As for the opinion evidence, the May 2017 medical source statement of treating physician Dr. Harold Lenhart, M.D. (Ex. 12F) lacks persuasive weight because there is no support in the objective medical records (even his own treatment notes) to support his opinion that "[Sanders] continuing depressive symptoms make her return to the work force impossible." Dr. Lenhart does not explain why her symptoms would preclude all work activity, nor does he offer any specific functional limitations that relate to work-related mental activities. He states only that she has low energy, concentration is "difficult" and she is socially

7

> isolated. However, this does not translate into a finding of disability and his opinion that she cannot work "at this time" is conclusory on a matter that is reserved to the Commissioner. Moreover, he states that she is motivated to return to work and her prognosis is hood, which suggests that he may not even think her difficulties will persist for at least twelve continuous months. For these reasons, Dr. Lenhart's statements are accorded little weight.

(*Id.*, PageID.73.) The ALJ likewise did not find persuasive the May 2018 treatment notes of Dr. Adams "wherein [Dr. Adams] described a loss of reflex and sensory function that is no mentioned elsewhere in his records" and in which Dr. Adams recommended that Spooner have back surgery. (*Id.*) The ALJ found that record to be "so incongruent with the remainder of the medical record as to lack persuasive weight." (*Id.*) The Court discusses Dr. Adams' treatment notes in further detail below.

After adopting the light-work RFC, the ALJ found that Spooner was "capable of performing [her] past relevant work as a coffee shop counter attendant." (*Id.*, PageID.75.) He also determined that "there [were] other jobs existing in the national economy that she [was] able to perform." (*Id.*, PageID.76.) He therefore concluded that Spooner was "not disabled" and not entitled to benefits. (*Id.*, PageID.77.)

Spooner appealed the ALJ's ruling to the Appeals Council, and that council denied review. (*See* ECF No. 12-2, PageID.51-53.)

8

## C

On November 15, 2019, Spooner filed this action seeking judicial review of the administrative decision denying her applications for benefits. (*See* Compl., ECF No. 1.)   Spooner and the Commissioner then filed cross-motions for summary judgment. (*See* Spooner Mot., ECF No. 19; Comm'r Mot., ECF No. 21.)

In Spooner's motion, she raised two primary arguments.   First, she argued that the ALJ's determination that she could "perform gainful employment on a regular and sustained basis" was "not supported by substantial evidence of record." (Spooner Mot., ECF No. 19, PageID.879.)   More specifically, Spooner argued that the ALJ's conclusion that she could perform "light exertional work on a regular and sustained basis" was erroneous given her need for back surgery. (*Id*., PageID.884.) Second, Spooner asserted that the ALJ erred when he found that Spooner's depression "failed to meet or equal the criteria of Listing Impairment 12.04." (*Id*.)

The assigned Magistrate Judge issued a report and recommendation on the parties' cross-motions on February 19, 2021. (See R&R, ECF No. 23.)   The Magistrate Judge recommended granting the Commissioner's motion and denying Spooner's motion.   (*See id.*)   The Magistrate Judge concluded that the ALJ's "various findings" regarding Spooner's back injury, and how that injury affected the level of work Spooner could perform, "were permitted under the regulations." (*Id*., PageID.941.)   Moreover, the Magistrate Judge determined that the ALJ had

thoroughly reviewed Spooner's medical records and "considered the consistency of the surgical recommendation." (*Id.*, PageID.940.) The Magistrate Judge also rejected Spooner's argument that the ALJ erred when he found that her depression did not meet or equal the listing criteria of Listed Impairment 12.04. (*See id.*, PageID.943.) The Magistrate Judge explained that this argument failed because Spooner had "not shown that her mental impairments me[t] or equal[ed] listing 12.04 or that the ALJ erred in his review of [her] mental health treatment records, the mental health opinion evidence, or [Spooner's] subjective statements." (*Id.*, PageID.954.)

## II

Spooner filed her objections to the R&R on March 8, 2021. (*See* Objections, ECF No. 24.) In all, Spooner raises 15 separate objections. (*See id.*) The Court will address each in turn below.

## A

In Spooner's first objection, she acknowledges that "[t]he Magistrate [Judge] correctly not[ed] that the Court must affirm the Commissioner's decision if it is supported by substantial evidence and was made pursuant to proper legal standards." (*Id.*, PageID.958; internal quotation marks omitted.) She then concedes that the Magistrate Judge also "correctly define[d] substantial evidence as such relative evidence that a reasonable mind might accept as adequate to support a conclusion."

(*Id.*; internal quotation marks omitted).  But she insists that the Magistrate Judge "fail[ed] to apply the reasonable mind test to the plethora of instances where he directly or indirectly [found] that there was 'substantial evidence' in circumstances that no reasonable mind would find that there were." (*Id.*)

Spooner's objection includes no particularized showing of error by the Magistrate Judge.  Indeed, rather than identifying specific portions of the R&R in which the Magistrate Judge erroneously found there to be substantial evidence in support of the ALJ's conclusions, and explaining to the Court how and why the Magistrate Judge erred, Spooner instead cites to nearly twenty pages of the R&R and leaves it the Court to figure out what portions of those pages are relevant to her objection.  (*See id.*, citing R&R, ECF No. 23, PageID.936-955.)  Where a party presents an objection that does "not specifically address how [a] report's factual and legal recommendations [are] incorrect," that objection is "waived." *Fields v. Lapeer 71-A Dist. Court Clerk*, 2 F. App'x 481, 482 (6th Cir. 2001). *See also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed"); *Aldrich v. Bock,* 327 F.Supp.2d 743, 747 (E.D. Mich. 2004) ("An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context").  Because

this objection is tantamount to a general objection to the entirety of the Magistrate Judge's R&R, this objection is **OVERRULED**.

## B

Spooner argues in her second objection that "the Magistrate Judge err[ed by] applying a credibility standard that was rejected years prior to the hearing of the instant case." (Obj., ECF No. 24, PageID.959.)  But Spooner does not specifically identify or explain how the Magistrate Judge allegedly applied this improper standard.   More importantly, Spooner does not even attempt to show how the purported misapplication of this standard made a difference in the Magistrate Judge's assessment of her claims.   Finally, as the Commissioner points out, the Magistrate Judge here did not use the word "credibility" when evaluating the ALJ's conclusions.   For all of these reasons, this objection is **OVERRULED**.

## C

In Spooner's third objection, she argues that when the Magistrate Judge "analyz[ed] the evidentiary bases of the ALJ's denial decision," the Magistrate Judge "ha[d] no objection to the ALJ's frequent cherry-picking of the evidence and refusal to address all of the evidence, including the evidence that was factually, legally and logically contrary to his RFC." (Obj., ECF No. 24, PageID.959-960.)  But Spooner does not specifically identify any of the allegedly "cherry-pick[ed]" evidence on which she says the ALJ relied. Because Spooner has not identified for the Court any

particular instances where the ALJ relied upon evidence that was "factually, legally, and logically contrary to his RFC," Spooner has not provided the Court any basis to sustain this objection.  This objection is therefore **OVERRULED**.

### D

Next, in Spooner's fourth objection, she argues that by refusing to disturb the ALJ's denial of benefits, the Magistrate Jude "wholly ignore[d]" the "remedial underpinnings of the disability provisions of the Social Security Act." (*Id.*, PageID.960.)  This amounts to nothing more than a generalized objection to the entirety of the R&R.  It is therefore not an appropriate objection. *See, e.g.*, *Howard v. Sec. of Health and Human Svs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection to the entirety of the magistrate's report has the same effects as would a failure to object").  This objection is therefore **OVERRULED**.

### E

In Spooner's fifth objection, she argues as follows:

> The Magistrate Judge (ECV No. 23,  PageID 936) confuses Plaintiff's argument that the circumstantial evidence supports Plaintiff's testimony that her PCP, Gary Ng, MD, did not test her for gait and station, nor *test* her for motor deficits nor neurological compromise, notwithstanding his office notes to the contrary, because logically why would the PCP refer her to PT if he had, in fact, performed the stated examinations and found, in each and every case and on each and every date that the results were always negative'? In fact, Defendant conceded as much, noting, "While this may be true for some of the visits," that on three of the visits "new findings were

included in the treatment notes." (ECF No. 21, PageID 908, referring to ECF No. ECF 12-7, PageID 501,496 and ECF 12-8, PageID 658), where, in point of fact, no abnormalities were found in these Defendant cited records in terms of gait and station, motor and sensory functions. The Magistrate Judge enigmatically concludes from all this that, "Plaintiff's remarks about repeating findings without re examination do not illustrate an inability to perform the exertional limitations of light work," (ECF No. 23, PageID 937) thereby wholly missing the thrust of Plaintiff's argument. It is not incumbent upon Plaintiff to prove her entire case by this one issue, as the Magistrate Judge argues, but rather this is just another piece of evidence, which when taken together, demonstrate the error of the ALJ's findings, RFC and ultimately, his denial of Plaintiff's application for benefits. Once the Defendant has essentially conceded the point, as here, it was reversible error for the Magistrate Judge to then rely on this same erroneous "evidence" to deny Plaintiff's application.

(Obj., ECF No. 24, PageID.960-961.)

This objection is unclear and not reasonably understandable.  It is overruled for that reason alone.

To the extent that the Court can discern a particular argument in this objection, Spooner appears to assert that the Magistrate Judge misunderstood her argument about why the treatment notes from her primary care physician, Dr. Ng, did not undermine her subjective statements about how debilitating her back condition was. The Commissioner explained why this objection failed as follows:

The Magistrate Judge understood the argument and his analysis was correct. (ECF No. 23, PageID.936). First, he explained that the ALJ appropriately considered those

14

normal clinical findings when evaluating her subjective statements. (ECF No. 23, PageID.936) (citing 20 C.F.R. § 404.1529(a) (in evaluating a claimant's subjective allegations, an ALJ must consider "the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence."). Second, the Magistrate Judge explained that, even if it is true that all of those normal clinical findings did not reflect actual examinations—although, the variation in the treatment notes suggests otherwise—Plaintiff still had not satisfied her burden of proof. (ECF No. 23, PageID.936–937) (citing *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("[t]he claimant . . . retains the burden of proving her lack of residual functional capacity.") (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999)). Because those treatment notes included no abnormal clinical findings (PageID.496, 501, 520, 647, 651, 655, 658-659, 662, 666), the ALJ properly found that they were inconsistent with her allegations of disabling limitations. There was no error by the ALJ or the Magistrate Judge.

(Resp. to Obj., ECF No. 25, PageID.982-983; internal footnotes omitted.)  The Court agrees with the Commissioner's reasoning and concludes that Spooner has not shown why she is entitled to relief on this objection. For all of these reasons, this objection is **OVERRULED.**

## F

Next, in Spooner' sixth objection, she objects to how the Magistrate Judge cited to the medical evidence in the record. (*See* Obj., ECF No. 24, PageID.961-962.)  The Court has reviewed the R&R and concludes that the Magistrate Judge clearly reflected where the parties could find the medical evidence that he relied

upon. Spooner's complaint that the Magistrate Judge's citation format is "impossible to follow" is therefore meritless. (*Id.*, PageID.961.) This objection is **OVERRULED**.

**G**

In Spooner's seventh objection, she argues that the ALJ "fail[ed] to realize the sudden change in" Spooner's back condition following a March 2017 car accident. (*Id.*, PageID.962.) Spooner insists that her back condition deteriorated substantially following that accident, and she says that the ALJ ignored her medical records from the period following the accident:

> Taking this medical evidence contextually, as we must, it becomes apparent that Plaintiff's spinal conditions underwent a significant change on 3/17/17 when she was seriously injured in a vehicular accident. Magistrate Judge Patti is justified in relying on medical evidence prior to that date in minimizing the extent and severity of her spinal condition prior to that date, but not in relying on such evidence for the period after March 17, 2017. In other words, all of the ALJ's arguments that plaintiff's spinal condition had significantly improved, predate 3/17/17 and are therefore valid only in analyzing whether Plaintiff was disabled prior to that period. *None of these citations refer to the period subsequent to 3/17/17*, after which all of the medical evidence was indicative of Plaintiff having sustained both a cervical and lumbrosacral disc herniation, as established by MRI and repeated clinical examinations, the results of which are completely consistent and supportive of Plaintiff's testimony that she was physically wholly disabled from engaging in any regular and sustained employment, and did, in fact, require that she undergo a lumbosacral fusion, and likely cervical surgery once she had convalesced from her lower back surgery.

16

> *The bottom line here is that the ALJ and the Magistrate*
> *Judge erred in arguing that evidence that predated the*
> *3/17/17 accident was relevant in establishing that she was*
> *disabled after the accident.*

(*Id.*, PageID.964-965; emphasis added.)

Spooner is wrong when she claims that "none" of the citations relied upon by the ALJ "refer to the period subsequent" to Spooner's March 2017 car accident. For instance, the ALJ cited and relied upon several records from Mid Michigan Pain from April, June, and August 2017, all of which were created after her car accident. (*See* ALJ Decision, ECF No. 12-2, PageID.71, citing medical records at ECF No. 12-8, PageID.624, 629, and 640.) And those records indicated that Spooner experienced a "significant decrease in the pain in [her] lower back" from epidural injections that was treated with at those appointments. (*See*, *e.g.*, *id.*, PageID.633.) Likewise, the ALJ cited Dr. Adams' December 6, 2017, treatment notes, which again, reflected an evaluation that took place many months after Spooner's car accident, in support of his conclusion that Spooner had, as of December 2017, "completely normal strength in both legs as well as both arms, negative straight leg raising, normal pules, and even gait, ability to heel and toe walk, no sacroiliac joint tenderness, and normal reflexes." (ALJ Decision, ECF No. 12-2, PageID.71, citing medical records at ECF No. 12-8, PageID.768-771.) The ALJ also cited to MRI results from December 18, 2017, and electrodiagnostic studies performed in April 2018. (*See* ALJ Decision, ECF No. 12-2, PageID.72.) Finally, the Magistrate Judge

also cited to these same, post March-2017 medical records. (*See*, *e.g.*, R&R, ECF No. 23, PageID.939.)  Thus, because the premise of this objection – that the ALJ and the Magistrate Judge did not "refer to the period subsequent to 3/17/17" – is contrary to the record, this objection is **OVERRULED**.

## H

Spooner's eighth objection has two primary components.  First, Spooner argues that "[t]he Magistrate Judge err[ed] in his dismissal of Dr. Adams 5/7/2018 findings and conclusions, arguing that his clinical findings and surgical recommendation 'occurred after Plaintiff's December 31, 2017 [date last insured].'" (Obj., ECF No. 24, PageID.965, quoting R&R, ECF No. 23, PageID.939 n.3.)  But Spooner has failed to show that the quoted portion of the R & R to which she objects was material to the Magistrate Judge's analysis.  Indeed, the quote that Spooner finds objectionable appeared in a footnote and was offered as one of three separate reasons that the Magistrate Judge found certain testimony by Spooner to be unsupported by the evidence in the record. (*See* R&R, ECF No. 23, PageID.939 n.3.)

Second, Spooner also argues that the Magistrate Judge wrongly accepted the ALJ's decision to discount Dr. Adams' May 2018 treatment notes on the ground that they were "so incongruent with the remainder of the record as to lack persuasive weight." (Obj., ECF No. 24, PageID.966, quoting ALJ Decision, ECF No. 12-2, PageID.73.)  Spooner asks: "[i]ncongruent to what evidence?" She answers: "[t]he

18

evidence prior to the 3/17/17 accident." (*Id.*) This question and answer sequence echoes Spooner's earlier argument that the ALJ erred by resting important parts of his decision on medical records that pre-dated her March 2017 car accident instead of medical records from after that accident. However, Spooner has failed to persuade the Court that the ALJ discounted Dr. Adams' May 2018 notes on the sole basis that those notes conflicted with evidence from before Spooner's March 2017 accident. As explained at length above, the ALJ cited several pieces of evidence that *post-dated* Spooner's March 2017 accident, in support of his conclusion that she was not disabled. (*See supra* at Section II(G); *see also* ALJ Decision, ECF No. 12-2, PageID.71-72, citing medical records at ECF 12-8, PageID. 624, 629, 640, and 768-771.) There is thus no reason to believe that the ALJ considered only evidence that pre-dated her March 2017 accident when he decided to discount Dr. Adams' May 2018 notes. On the contrary, there is every reason to believe that he based that decision, in part, on evidence and records that *post*-dated the March 2017 crash – evidence that, in the Court's view, could reasonably be regarded as inconsistent with any suggestion in Dr. Adams' May 2018 note that Spooner was disabled.

For all of these reasons, this objection is **OVERRULED**.[1]

---

[1] Spooner also argues in this objection that Dr. Adams' May 2018 treatment notes are relevant to whether she is entitled to benefits from "May 2018 through the present." (Obj., ECF No. 24, PageID.966.) But this argument fails for two reasons. First, it again relies on Spooner's argument that the ALJ did not consider any medical evidence after Spooner's March 2017 car accident, and, for all of the reasons stated

## I

In Spooner's ninth objection, she again complains about the citation format used by the Magistrate Judge.  For the reasons explained in Section II(F) above, this objection is **OVERRULED**.

## J

Spooner's tenth objection is as follows:

> Magistrate Judge Patti errs in accepting the ALJ's ludicrous statement that Plaintiff's "updated lumbar imaging studies did not reveal any progression of her degenerative disc disease..." (ECF No. 23, PageID 940). First, note that prior to 3/ 17 /17, Plaintiff had not undergone any cervical MRI and had complained of a history of chronic mild non-radiating neck pain on only one medical visit, that being a historical note of neck pain of 20-30 years duration that was not  treated prior  to nor subsequent  to her 8/1 16 office  visit with  Dr. Ng, which was for lumbosacral pain, not cervical pain. (ECF No. 12-7, PagelD 527) Notably, Dr. Ng referred her for PT, not of her neck, but rather of her low back on 8/26/16 (ECF 12-7, PageID 528) So, clearly, given the backdrop of her post-MVA MRI which demonstrated the presence of disc herniation at C5-6 resulting in effacement of the thecal sac at that level (ECF No. 12-8, PageID 674, 772), the repeated clinical findings of cervical abnormalities by both Drs. Tolga and Adams after the 3/17/17 date, and the sharp increase in Plaintiffs symptomatology since that date, the progression of the degenerative disc disease was the sudden appearance of a C5-6 disc herniation that simply did not exist prior to 3/17/17.

---

in text above, that is not true.  Second, as the Commissioner points out, Spooner "has not shown that her condition satisfied the 12-month durational requirement" necessary to entitle her to benefits. (Resp. to Obj., ECF No. 25, PageID.986 n.3.)

20

> As with the cervical spine, there is no comparison MRI of the lower back. This is because prior to that date there were no complaints of a radicular component to her low back pain. Compare this with the clinical indications noted for the 4/20/17 lumbar MRI: "Bilateral leg weakness, low back pain since MVA March 17, 2017 radiates into bilateral hips down into legs." For the ALJ, affirmed by the Magistrate Judge, reason that there was no progression in her underlying degenerative disc disease because there wasn't any comparison imaging study, is illogical at best and disingenuous at worst. In any case, it constitutes another basis of reversible error.

(Obj., ECF No. 24, PageID.967-968.)

This objection is unclear and not reasonably understandable.  It is overruled for that reason alone.

To the extent that the Court can discern an argument from this objection, Spooner appears to object to ALJ's statement that her "lumbar imaging studies did not reveal any progression of her degenerative disc disease." (ALJ Decision, ECF No. 12-2, PageID.73.)  But Spooner's extensive reliance on previous cervical studies in the objection quoted above seems misplaced.  As the Commissioner accurately points out, while Spooner objects to the ALJ's treatment of her *lumbar* imaging studies, she does so by referencing previous *cervical* studies, which studied a different part of Spooner's spine. (*See* Resp. to Obj., ECF No. 25, PageID.988.)

Moreover, Spooner has not shown that the ALJ's statement about lumbar imaging studies, even if erroneous, made a difference in the ALJ's disability determination here.  The ALJ made this statement in the context of explaining why

21

Dr. Adams' May 2018 treatment records "lack[ed] persuasive weight." (ALJ Decision, ECF No. 12-2, PageID.73.)  And as explained above, the ALJ discounted Dr. Adams' May 2018 treatment records for *several* reasons, only one of which was the fact that her lumbar imaging studies did not reveal any progression of her degenerative disc disease.  For instance, the ALJ pointed out that the Dr. Adams' description of Spooner in May 2018 could not be squared with his own, earlier examinations of her – including an examination from December 2017, nine months after her car accident. (*See id.*)  The ALJ also explained that Dr. Adams wrote in May 2018 that while Spooner told him that "all modalities she tried in the past were ineffective" for treating her back pain, "[t]hat [was] not accurate[] according to both the physical therapy and injection progress notes" in the record. (*Id.*)  Thus, even if the ALJ erroneously evaluated Spooner's updated lumbar imaging studies when reviewing Dr. Adams' May 2018 treatment notes, Spooner has not shown that it was reversible error for the ALJ to discount the weight of those notes because they were inconsistent with the remainder of the record.  For all of these reasons, this objection is **OVERRULED**.

## K

Next, in Spooner's eleventh objection, she argues that she was "screwed regardless of what evidence she "produce[d]." (Obj., ECF No. 24, PageID.969.)  She insists that "[i]t's as if the facts don't really matter, just the zone of choice and the

issue of the RFC and disability being protected as within the sole judgment of the ALJ." (*Id.*)  Spooner's colorful language notwithstanding, as explained above, such a generalized objection to the R&R is insufficient.  Moreover, while Spooner argues in this objection that she has produced evidence that is supportive of her claimed disability – such as Dr. Adams' May 2018 treatment notes – as also discussed above, the ALJ and Magistrate Judge both explained why those treatment records do not compel a finding of disability.  And Spooner has not shown any reversible error in those determinations.  Accordingly, this objection is **OVERRULED**.

## L

In Spooner's twelfth objection, she starts by noting that the Magistrate Judge correctly explained that "the ALJ is accorded a 'zone of choice' in his fact finding." (*Id.*, PageID.969.)  But she argues that "a zone of choice is not a license to cherry pick the facts, nor is it permission to ignore the gist of a case." (*Id.*)  And Spooner insists that the ALJ's rejection of her physical and mental impairments fell outside this "zone of choice." (*Id.*)  Moreover, Spooner asserts that "no reasonable mind could glean from the evidence of record for the period after 3/17/17 that [Spooner] could physically perform the restricted range of work that the ALJ memorialized in his RFC given her two herniated discs in need of surgical attention.  Such a conclusion defines both logic and credulity and finds no support in the medical evidence of record for the period after 3/17/17." (*Id.*, PageID.971.)

The Court overrules this objection for several reasons. First, it is a generalized objection to the R&R as a whole, and as such, and as described above, it is not an appropriate objection. Simply put, this objection does little more than disagree with the result reached by the ALJ and Magistrate Judge. Second, as also discussed above, contrary to Spooner's argument, the ALJ and the Magistrate Judge both explained why the medical evidence – including the medical evidence that post-dated Spooner's March 2017 car accident – supported a conclusion that she was not disabled. Finally, even if this Court would not have reached the same result if it was reviewing her claim for benefits in the first instance, Spooner has not shown that the ALJ and Magistrate Judge's conclusions after their thorough review of the records constitutes reversible error. For all of these reasons, this objection is **OVERRULED**.

## M

In Spooner's thirteenth objection, she asserts that the Magistrate Judge erred when he "accept[ed] the ALJ's erroneous and unconvincing reasoning as to why '[t]he record does not support a finding of disability'" with respect to Spooner's mental impairments. (*Id.*, PageID.971.) And she insists that "[t]he ALJ utterly fail[ed] to explain just how on individual on multiple psychotropic medications with continuing suicidal ideation, anxiety, inability to control her anger or her emotions, given to emotional lability, would be expected to have the wherewithal of driving

24

back and forth to work, and putting in eight hour shifts dealing with the public, her co-employees, her supervisors, and remaining on task throughout the workday, especially given her record of having repeatedly lost jobs in the past." (*Id.*, PageID.972.)

But the ALJ did explain why Spooner's mental impairments did not render her disabled.  For instance, the ALJ pointed out that Spooner "lives independently, cares for her autistic son, maintains her home and advocates effectively for herself." (ALJ Decision, ECF No. 12-2, PageID.83.)  And he explained Spooner suffered "no decline in memory, attention, cognition, or interpersonal functioning to warrant finding greater than moderate limitation overall. (*Id.*)   Finally, he found that Spooner's individual and group therapy records showed that she had "learned" many coping skills that "she was able to employ despite facing numerous psychosocial stressors." (*Id.*, PageID.72.)  The ALJ also explained why he discounted the May 2017 opinion of Dr. Lenhart that Spooner was unable to work. (*See id.*, PageID.73.) And while Spooner may disagree with the conclusions that the ALJ reached after reviewing these records, she has not persuasively explained how or why that review constitutes reversible error.   For all of these reasons, this objection is **OVERRULED**.

**N**

In Spooner's fourteenth objection, she objects to the ALJ's decision to assign "little weight" to the opinions of her treating psychiatrist Dr. Lenhart "while concomitantly assigning greater weight to the opinion of Dr. Garner, [the Commissioner's] non-examining psychologist." (Obj., ECF No. 24, PageID.972.) Spooner says that "[t]he fact that Dr. Lenhart is a Board Certified psychiatrist, and the only psychiatrist of record, that he has more than 40 years experience in the field of psychiatry, that he served as [Spooner's] long-time treater, are all the more reasons to accord Dr. Lenhart's findings and opinions greater weight than a non-examining psychologist employed by [the Commissioner]." (*Id.*)

This objection is overruled.  As explained above, the ALJ provides several reasons for discounting Dr. Lenhart's May 2017 opinion that Spooner was unable to work.  For example, the ALJ explained that "there [was] no support in the objective medial records (even his own treatment notes) to support his opinion that '[Spooner's] continuing depressive symptoms make her return to the workforce impossible.'" (ALJ Decision, ECF No. 12-2, PageID.73.)  The ALJ further wrote that Dr. Lenhart had "not explain[ed] why [Spooner's] symptoms would preclude all work activity, nor [did] he offer any specific functional limitations that relate to work related mental activities." (*Id.*)  Finally, the ALJ pointed out that Dr. Lenhart "state[d] that [Spooner] is motivated to return to work and her prognosis is good,

26

which suggest[ed] that [Dr. Lenhart] [did] not even think [Spooner's] difficulties [would] persist for at least twelve continuous months." (*Id.*)   Spooner does not address any of these critiques of Dr. Lenhart's opinions in her objections.   And Spooner has not persuaded the Court that Dr. Lenhart's qualifications and/or the length of his treating relationship with Spooner undermine the ALJ's reasons for discounting Dr. Lenhart's opinions. Likewise, while Spooner says that "[a]ll too often th[e] non-examining regulars [employed by the Commissioner] simply provide[] an illegitimate basis for an ALJ to deny benefits" (*id.*, PageID.972-973), this generalized objection to the use of consulting physicians says absolutely nothing about Dr. Garner's opinions in particular or the ALJ's specific treatment of those opinions.   Spooner simply has not provided any specific argument that focuses on the actual opinions provided by Dr. Lenhart and Dr. Garner.   For all of these reasons, this objection is **OVERRULED**.

## O

In Spooner's final objection, she argues that the Magistrate Judge erred when he "conclude[d] that [she] ha[d] failed to carry her burden of proof in establishing that her depression, which the ALJ found constituted a severe impairment, met or equaled the criteria of Listed Impairment 12.04A and B." (*Id.*, PageID.973.)   This objection is overruled.

Listing 12.04 is titled "Depressive, bipolar, and related disorders." It provides in relevant part:

> 12.04 Depressive, bipolar and related disorders (see 12.00B3), satisfied by A and B, or A and C:
>
> A. Medical documentation of the requirements of paragraph 1 or 2:
>
>> 1. Depressive disorder, characterized by five or more of the following:
>>
>>> a. Depressed mood;
>>> b. Diminished interest in almost all activities;
>>> c. Appetite disturbance with change in weight;
>>> d. Sleep disturbance;
>>> e. Observable psychomotor agitation or retardation;
>>> f. Decreased energy;
>>> g. Feelings of guilt or worthlessness;
>>> h. Difficulty concentrating or thinking; or
>>> i. Thoughts of death or suicide.
>>
>> [….]
>>
>> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:
>
>> 1. Understand, remember, or apply information.
>> 2. Interact with others.
>> 3. Concentrate, persist, or maintain pace.
>> 4. Adapt or manage oneself.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04 (internal citations omitted). In the ALJ's decision, he focused on the "paragraph B criteria," and, as quoted at length above, he concluded that she was not disabled under Listing 14.04 because she had not

28

shown "at least one extreme or two marked limitations" from *that subparagraph*. (ALJ Decision, ECF No. 12-2, PageID.68.)  However, in Spooner's objection, she concentrates on the "depressive disorder" criteria listed under paragraph A1.  For instance, she points out that the records of her treating therapist "are replete with [Spooner's] confessions of feeling overwhelmed, having difficulty controlling her anger … [and] feelings of hopelessness" and that Dr. Lenhart's "mental status examinations" show that she is "anxious," "depressed," "weeps at times," "has passive longing for death with fleeting suicidal ideation," and has an "intense" affect. (Obj., ECF No. 24, PageID.974-975.)  But because the ALJ did not rule against Spooner based the criteria listed in paragraph A1, Spooner's references to medical records relevant to that paragraph do not show that the ALJ erred.

For all of these reasons, this objection is **OVERRULED**.

### III

For all of the reasons explained above, Spooner' Objections to the R&R (ECF No. 24) are **OVERRULED**, Spooner's motion for summary judgment (ECF No. 19) is **DENIED,** and the Commissioner's motion for summary judgment (ECF No. 21) is **GRANTED**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 29, 2021

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 29, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764